VERRAH SANDERS, DEFENDANT IN ERROR, v. KANSAS CITY, MISSOURI, PLAINTIFF IN ERROR.—107 S. W. (2d) 795.

Kansas City Court of Appeals, October 11, 1937.

408

*J. Victor Schultz* for defendant in error.

*George Kingsley*, City Counselor, *Francis L. Roach*, and *Marcy K. Brown, Jr.*, Assistant City Counselors for plaintiff in error.

CAMPBELL, C.—The defendant in error, hereinafter called plaintiff, while walking east upon a public sidewalk on the south side of Fourteenth Street in Kansas City, Missouri, stepped into a hole, fell, and was injured. She brought this suit to recover for her injuries, obtained a verdict and judgment in the sum of $2,000. The plaintiff in error, hereinafter called defendant, brought the case here on writ of error.

The plaintiff testified that on the forenoon of February 1, 1933, while she was walking upon a concrete sidewalk four feet wide on the south side of Fourteenth Street in the defendant city, she stepped into a hole, in consequence of which she was severely injured; that prior to the day of injury she had not traveled on said sidewalk nor did she have knowledge of any defect in the walk.

Plaintiff in describing her action, immediately before and at the time of the accident, testified as follows:

"Q. As you were walking along there, tell the jury in what manner you were walking? A. I was really walking along as I always walked.

"Q. Were you looking ahead of you? A. I glanced up and in front of me every once in a while; then I would look down at my feet to see where I was walking.

"Q. Were you walking in the ordinary and usual manner you always walk? A. Yes, sir.

"Q. What, if anything did you notice near the place where you fell, before you fell? A. I never noticed anything, only a bunch of paper laying there.

"Q. You noticed a bunch of paper—and were they at the place where the hole was? A. Yes, they were all along there.

"Q. Were you able to see the hole for the papers? A. No, sir, I didn't see no hole.

"Q. What was the reason you could not see the hole? A. There were papers there.

"Q. Were papers hiding or covering the hole? A. Yes, sir.

. . .

"Q. Now, didn't you see the place you say was there? A. No, sir, it—well, there was papers all along there.

"Q. There was papers all along there—now, is that a street that was usually full of papers? A. Oh, not exactly all the time, but it looked like someone had dumped some papers, and they blowed up there.

"Q. Where were those papers? A. They were in the hole, and all along the sidewalk. . . .

"Q. You saw some papers on the sidewalk? A. Yes, sir.

"Q. Did they—were there any in this place underneath the sidewalk, or where the concrete was broken? A. They were even there the next day.

"Q. I didn't ask you about the next day, but this particular time, were they there then? A. Yes, sir.

"Q. Did that cover that place over? A. Yes.

"Q. In other words, you want the jury to believe that, as you were approaching there, the top of the walk, the surface of the walk looked absolutely flat? A. Yes, sir.

"Q. And you could not see that place, that is right? A. Yes.

"Q. So, what you thought was merely a piece of paper on top of the walk proved to be a paper over a hole—that is what you want the jury to believe? A. Yes, sir.

"Q. And that was a whole sheet of newspaper? A. Yes, and other papers under it. . . .

"Q. And the hole at that time was then level full of papers? A. It may not have been level, but it was full of papers. . . .

"Q. But you still want to say the papers on top were level, and flat, just like this, and held up there by something? A. Held up there by something.

"Q. Something underneath held them up. A. Yes. . . .

"Q. But there was papers underneath, holding them up flat over that place? A. Yes, sir. . . .

"Q. Was the place underneath absolutely full, up to the concrete, up to the surface? A. As much as I noticed, they were."

The evidence shows that the hole in the sidewalk was 3 feet long, 18 inches wide and 18 inches deep and that it existed for about one year prior to February 1, 1933.

The defendant contends the court erred in refusing its instruction in the nature of a demurrer to the evidence for the reason that

plaintiff was guilty of contributory negligence as a matter of law, and that plaintiff did not give notice of accident as required by Section 7493, Revised Statutes 1929.

The defendant argues that the defect was plainly obvious and, hence, plaintiff was bound to see it. This insistence overlooks the evidence to the effect that the hole was covered with paper, which concealed the dangerous condition. The defendant, however, says that the evidence of plaintiff to the effect that the hole was covered with paper "is so outside all common knowledge and so far away from all physical possibilities of the occasion, that the testimony is absolutely worthless and should be totally disregarded by this court."

This court cannot weigh the evidence. If it were true that the hole was covered with papers, then we cannot say that plaintiff was guilty of negligence as a matter of law. The truth of plaintiff's testimony was for the consideration of the jury. The jury saw plaintiff, heard her testify and believed her story. The trial judge also saw the plaintiff, heard her testify, and approved the verdict. In such circumstances this court, in the absence of power to value the evidence, cannot interfere.

Concerning the notices of injury, the first notice served March 10, 1933, correctly stated the location of the hole and stated that the accident occurred on February 10. The correct date of accident was February 1. The second notice, served on April 28, 1933, said the accident occurred on February 1, and misdescribed the place of accident. It affirmatively appears that photographs of the hole into which plaintiff fell were "invoiced" to the defendant on April 11, 1933. There is nothing in the record indicating that the mistakes in the notices misled or prejudiced defendant. It may be, the facts in the case considered, the notices were sufficient. [Boyd v. Kansas City, 291 Mo. 622, 237 S. W. 1001; Costellow v. Kansas City, 219 S. W. 386; Canter v. City of St. Joseph, 105 S. W. 1.] However, the sufficiency of the notices need not be determined for the reason that the question of notice or no notice was not an issue in the case. The defense of failure to give notice is an affirmative one.

The answer was a general denial and a plea of contributory negligence; hence, the question of notice was not an issue in the case. [Koontz v. City of St. Louis, 89 S. W. (2d) 586; David v. City of St. Louis, 96 S. W. (2d) 353.] It was proper for the court to submit the case to the jury.

Lee Smith, plaintiff's witness, testified the "hole was there on February 1, 1933, . . . and it was there the whole year of 1932 and at least a year back of February 1st." On cross-examination the witness testified that he worked for the Kansas City Stock

Yards Company; that he "worked for the CWA a while, and any other work" he could get; that his foreman in the stock yards was John Mankin.

"Q. You haven't got a saloon on Fourteenth Street? A. How is that?

"Q. Do you own or run a saloon? A. I never did own one.

"Q. You don't own one there? A. On Fourteenth Street?

"Q. Or Thirteenth Street? A. No, sir.

"Q. Why did you specify that street—do you have any interest in a liquor place anywhere? A. No, sir.

"Q. Not at all? A. No.

"Q. And you don't work for one? A. No, sir. There is one at Fourteenth and Washington.

"Q. Did you ever work there? A. No, sir"

The defendant's witness Dore, timekeeper of the Kansas City Stock Yards Company, over the objections of plaintiff, testified that he had examined the record of the stock yards company and that Lee Smith's name was not on the payroll; that John Mankin was not a foreman in the stock yards company.

The defendant's witness, Dougherty, over the objections of plaintiff, testified that the witness, Lee Smith, was "on relief now."

"Q. What do you know about him? A. For the last three, four or five years I think he has been a professional bootlegger.

"Q. Does he live near you? A. A block from him.

"Q. Did you ever buy liquor from him? A. Yes.

"Q. Where? A. When he lived at 1304-2 Washington."

The plaintiff's motion to strike the testimony on the ground that it was a collateral attack, was overruled.

At the close of the case the court of its own motion gave Instruction C-1 as follows:

"The court instructs the jury that all statements of witness James K. Dore are withdrawn from your consideration, and are not evidence in this case, and you shall not consider the same.

"The jury are further instructed that that portion of the testimony of T. C. Dougherty relating to the occupation of witness Lee Smith, wherein the witness stated that 'for the last 3, 4 or 5 years I think he has been a professional bootlegger,' and wherein he stated that he bought liquor from him at 1304 or 1302 Washington, is not evidence in this case, and is withdrawn from the consideration of the jury."

The defendant says that the court erred in giving said Instruction C-1.

The evidence of Dore and Dougherty evidently admitted, for the purpose of impeaching the witness Smith, was erroneously received. The withdrawal of such evidence was not error. [Miller v.

The Journal Company, 246 Mo. 722; Grubbs v. Kansas City Public Service Company, 45 S. W. (2d) 71.]

It must be borne in mind that this case does not present the question as to whether or not it was proper to interrogate Smith concerning his habits; nor a case in which the witness was questioned concerning statements made by him to another; nor a case where the witness was asked as to his bias or prejudice for or against either party, but a case in which the delinquencies of the witness were attempted to be put in issue by the defendant. The morals of Smith was a collateral matter and the defendant was concluded by the statements of Smith on that subject. [Connell v. A. C. L. Haase & Sons Fish Co., 257 S. W. 760; Wendling v. Bowden, 161 S. W. 774, 789; Janis v. Jenkins, 58 S. W. (2d) 298.]

The foregoing disposes of all of the questions presented on this appeal. The judgment is affirmed. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C.; is adopted as the opinion of the court. The judgment is affirmed. All concur.